IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AMBER SIEKMAN, | ) | |
| | ) | |
| Plaintiff, | ) | 4:12-cv-03222-RGK-CRZ |
| | ) | |
| v. | ) | Judge Kopf |
| | ) | Magistrate Judge Zwart |
| | ) | |
| LIGHTHOUSE RECOVERY ASSOCIATES, LLC., and ROBERT BARRY, JR., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff, AMBER SIEKMAN, by and through her attorneys, SMITHMARCO, P.C., and for her complaint against the Defendants, LIGHTHOUSE RECOVERY ASSOCIATES, LLC., and ROBERT BARRY, JR., Plaintiff states as follows:

### I.   PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

### II.   JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III.   PARTIES

4. AMBER SIEKMAN, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Bertrand, County of Phelps, State of Nebraska.

1

5. The debt that Plaintiff was allegedly obligated to pay was for a credit card, on which charges were incurred primarily for the personal use of Plaintiff and/or for household expenditure (hereinafter, "the Debt").

6. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

7. LIGHTHOUSE RECOVERY ASSOCIATES, LLC., (hereinafter, "LRA") is a business entity engaged in the collection of debt within the State of Nebraska.  LRA is registered as a limited liability company in the State of Colorado.

8. The principal purpose of LRA's business is the collection of debts allegedly owed to third parties.

9. LRA regularly collects, or attempts to collect, debts allegedly owed to third parties.

10. During the course of its efforts to collect debts allegedly owed to third parties, LRA sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

11. At all relevant times, LRA acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

12. At all relevant times, LRA acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

13. Defendant, ROBERT BARRY JR., (hereinafter "Barry") is an individual who, upon information and belief, was at all relevant times residing in the State of Colorado.

14. Upon information and belief, at all relevant times, Barry was acting as an Owner, Officer, Director, Manager and/or agent of LRA.

15. Upon information and belief, at all relevant times, Barry was vested with the responsibility to manage LRA.

16. Upon information and belief, at all relevant times, Barry was responsible for the management and/or affairs of LRA.

17. Upon information and belief, at all relevant times, Barry was responsible for the day to day operations of LRA.

18. Upon information and belief, at all relevant times, Barry was responsible for the supervision of LRA's employees, agents and/or representatives that were attempting to collect debts.

19. Upon information and belief, at all relevant times, Barry was responsible for the management of LRA's employees, agents and/or representatives that were attempting to collect debts.

20. As such, at all relevant times, Barry acted as a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

### IV.   ALLEGATIONS

### COUNT I:
### AMBER SIEKMAN v. LIGHTHOUSE RECOVERY ASSOCIATES, LLC.

21. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

22. In or around June 2012, LRA sent a letter to Plaintiff in an attempt to collect the Debt.

23. In or around June 2012, LRA initiated multiple telephone calls to Plaintiff in an attempt to collect the Debt.

24. At the time LRA initiated the aforesaid telephone calls to Plaintiff, LRA left Plaintiff voicemail messages in a further attempt to collect the Debt.

25. LRA initiated the aforesaid telephone calls to Plaintiff at her cellular telephone number.

26. During the course of the aforesaid time period, LRA was cognizant of an address at which it could communicate with Plaintiff relative to the Debt.

27. During the course of the aforesaid time period, LRA was cognizant of a telephone number at which it could communicate with Plaintiff relative to the Debt.

28. In or around June 2012, subsequent to LRA having communicated with Plaintiff relative to the Debt, LRA initiated a telephone call to Plaintiff at her place of employment in an attempt to collect the Debt.

29. At the time LRA initiated the aforesaid telephone call to Plaintiff at her place of employment, Plaintiff engaged in a telephone conversation with LRA.

30. Plaintiff informed LRA that she could not speak to LRA while at her place of employment.

31. Plaintiff further specifically advised LRA that she was not able her to accept calls of such nature while she is at work.

32. From in or around June 2012 through in or around July 2012, subsequent to the aforesaid telephone conversation between the parties, LRA had information in its possession relative to a telephone number, other than Plaintiff's telephone number at her place of employment, at which LRA could communicate with Plaintiff relative to the Debt.

33. From in or around June 2012 through in or around July 2012, subsequent to the aforesaid telephone conversation between the parties and despite LRA having been advised that Plaintiff's employer prohibits her from receiving calls such as those from LRA, LRA proceeded to initiate multiple telephone calls to Plaintiff at her place of employment in a further attempt to collect the Debt.

34. During the aforesaid time period, on multiple occasions, Plaintiff reiterated to LRA that she could not speak to LRA while she was at work.

35. During the aforesaid time period, on multiple occasions, Plaintiff's colleagues at Plaintiff's place of employment answered the telephone calls by LRA to Plaintiff at her place of employment in an attempt to collect the Debt.

36. During the aforesaid time period, on multiple occasions, LRA's duly authorized representative informed Plaintiff's colleagues at her place of employment that he was calling from LRA in an attempt to contact Plaintiff.

37. During the aforesaid time period, on multiple occasions, Plaintiff's colleagues also informed LRA that Plaintiff could not speak to LRA while she was at work.

38. At the time LRA initiated the aforesaid telephone calls to Plaintiff's place of employment, Plaintiff's daughter was working at Plaintiff's place of employment.

39. At the time LRA initiated the aforesaid telephone calls to Plaintiff's place of employment, one of the individuals with whom LRA spoke was Plaintiff's daughter.

40. Plaintiff was upset, embarrassed and humiliated that LRA had informed her colleagues, one of which was her daughter, that it was attempting to contact her.

41. During the aforesaid time period, on multiple occasions, Plaintiff reiterated to LRA that she was not able to receive telephone calls while at her place of employment.

42. During the aforesaid time period, despite LRA having been advised on multiple occasions that Plaintiff did not want LRA to contact her at her place of employment, LRA continued to initiate multiple telephone calls to Plaintiff at her place of employment.

43. During the aforesaid time period, despite LRA having been advised, on multiple occasions, that Plaintiff was not able to accept telephone calls from LRA while she was at her place of employment, LRA continued to initiate multiple telephone calls to Plaintiff at her place of employment.

44. Prior to July 26, 2012, LRA had communicated with Plaintiff relative to the Debt.

45. Prior to July 26, 2012, LRA had information in its possession relative to contact information for Plaintiff.

46. Prior to July 26, 2012, LRA did not require location information for Plaintiff.

47. On or about July 26, 2012, despite having multiple contacts with Plaintiff and despite being fully cognizant of Plaintiff's location, LRA initiated multiple telephone calls to businesses located nearby the restaurant at which Plaintiff was employed in a putative attempt to contact Plaintiff.

48. On or about July 26, 2012, LRA initiated a telephone call to the office of the local newspaper in Plaintiff's town in an attempt to contact Plaintiff.

49. At the time LRA initiated the aforesaid telephone call to the office of the local newspaper in Plaintiff's town, LRA knew Plaintiff was not employed there.

50. On or about July 26, 2012, LRA initiated a telephone call to the City Hall in Plaintiff's town in an attempt to contact Plaintiff.

51. At the time LRA initiated the aforesaid telephone call to the City Hall in Plaintiff's town, LRA knew Plaintiff was not employed there.

52. On or about July 26, 2012, LRA initiated a telephone call to the grocery store in Plaintiff's town in an attempt to contact Plaintiff.

53. At the time LRA initiated the aforesaid telephone call to the grocery store in Plaintiff's town, LRA knew Plaintiff was not employed there.

54. On or about July 26, 2012, LRA engaged in telephone conversations with multiple third-parties at the aforesaid businesses located nearby the restaurant at which Plaintiff was employed wherein LRA informed said third-parties that it was attempting to locate Plaintiff.

55. On or about July 26, 2012, LRA engaged in telephone conversations with multiple third-parties at the aforesaid businesses located nearby the restaurant at which Plaintiff was employed wherein LRA's duly authorized representative stated that he was calling from Lighthouse Recovery Associates.

56. On or about July 26, 2012, at the time LRA initiated the aforesaid telephone calls to the aforesaid businesses, one of the individuals with whom LRA spoke was Plaintiff's friend.

57. On or about July 26, 2012, at the time LRA initiated the aforesaid telephone calls to the aforesaid businesses, one of the individuals with whom LRA spoke was Plaintiff's aunt.

58. On or about July 26, 2012, at the time LRA engaged in the aforesaid telephone calls with multiple third-parties, LRA did not state it was calling to confirm or correct location information for Plaintiff.

59. On or about July 26, 2012, multiple third-parties informed Plaintiff that they had been contacted by LRA and that LRA was attempting to locate Plaintiff.

60. Plaintiff was upset, embarrassed and humiliated that LRA had informed multiple third-parties that it was attempting to contact her.

61. Plaintiff did not provide LRA with consent to communicate with third-parties.

7

62. LRA's conduct in initiating multiple telephone calls to third-parties in a putative attempt to contact Plaintiff when LRA had contact information for Plaintiff and when LRA had engaged in multiple communications with Plaintiff was unfair and/or unconscionable.

63. In its attempts to collect the Debt allegedly owed by Plaintiff, LRA violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

   a. Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and failed to identify himself, failed to state that he is confirming or correcting location information concerning the consumer, and/or identified his employer without the express request of the consumer in violation of 15 U.S.C. §1692b(1);

   b. Communicated with the consumer at an unusual time and place or at a time or place which should be known to be inconvenient to the consumer in violation of 15 U.S.C. § 1692c(a)(1);

   c. Communicated with the consumer at the consumer's place of employment despite knowing or having reason to know that the consumer's employer prohibits the consumer from receiving such communication in violation of 15 U.S.C. §1692c(a)(3);

   d. Communicated in connection with the collection of any debt with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector in violation of 15 U.S.C. §1692c(b);

   e. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f; and,

   f. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

64. As a result of LRA's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

WHEREFORE, Plaintiff, AMBER SIEKMAN, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant, LIGHTHOUSE RECOVERY ASSOCIATES, LLC., as follows:

     a.    All actual compensatory damages suffered;

     b.    Statutory damages of $1,000.00;

     c.    Plaintiff's attorneys' fees and costs;

     d.    Any other relief deemed appropriate by this Honorable Court.

## COUNT II:
## AMBER SIEKMAN v. ROBERT BARRY, JR.

65.    Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

66.    In its attempts to collect the Debt allegedly owed by Plaintiff, Barry violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

a. Communicated with any person other than the consumer for the purpose of acquiring location information about the consumer and failed to identify himself, failed to state that he is confirming or correcting location information concerning the consumer, and/or identified his employer without the express request of the consumer in violation of 15 U.S.C. §1692b(1);

b. Communicated with the consumer at an unusual time and place or at a time or place which should be known to be inconvenient to the consumer in violation of 15 U.S.C. § 1692c(a)(1);

c. Communicated with the consumer at the consumer's place of employment despite knowing or having reason to know that the consumer's employer prohibits the consumer from receiving such communication in violation of 15 U.S.C. §1692c(a)(3);

d. Communicated in connection with the collection of any debt with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector in violation of 15 U.S.C. §1692c(b);

e. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f; and,

f. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

67. As a result of Barry's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

WHEREFORE, Plaintiff, AMBER SIEKMAN, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant, ROBERT BARRY, JR., as follows:

    a.    All actual compensatory damages suffered;

    b.    Statutory damages of $1,000.00;

    c.    Plaintiff's attorneys' fees and costs;

    d.    Any other relief deemed appropriate by this Honorable Court.

### V.    JURY DEMAND

68. Plaintiff hereby demands a trial by jury on all issues so triable.

69. The Plaintiff, AMBER SIEKMAN, by and through her attorneys, SMITHMARCO, P.C., and pursuant to Nebraska Civil Rule 40.1(b), hereby respectfully requests that the trial of this matter proceed in either Omaha or Lincoln.

    Respectfully submitted,
    **AMBER SIEKMAN**

    By:   s/ Larry P. Smith
          Attorney for Plaintiff

Dated: December 27, 2012

Larry P. Smith (Atty. No.: 6217162)
SMITHMARCO, P.C.
205 North Michigan Avenue, Suite 2940
Chicago, IL 60601
Telephone: (312) 324-3532
Facsimile: (888) 418-1277
E-Mail:    lsmith@smithmarco.com